Next case is 525-0630 in re Marriage of Kuhnert Good afternoon, are you, you are the appellant Okay, come on up. It's a pleasure to see all of you. It's a pleasure to meet you. Yeah, it is nice to be on this side of the grass. Okay, whenever you're ready, justices, opposing counsel, my name is Winter Campanella, I represent the appellant, Monty Kuhnert, who I'm going to refer to as Monty during my time with you this afternoon. Monty and his now former wife, Christy Kuhnert, obtained an agreed judgment for dissolution of marriage in Perry County. Now, I know you all read the briefs and you know the facts, but there's a few facts that I want to kind of touch on that are very important to our argument this afternoon. So, November 15, 2024, the parties negotiated an agreement in their case. It dealt with maintenance payments of a million dollars a year for eight years and health insurance. Specifically, if you look in the record at C30, paragraph J of the agreed judgment says, Monty shall pay Christy on his, shall maintain Christy on his health insurance until she reaches age 65 and can receive Medicare. Once Christy has secured Medicare coverage as quickly as possible after her 65th birthday, Monty's obligation to provide this coverage will terminate. That language is extremely important. The time that the parties signed this agreement is the time of contract, and that's going to be relevant as we go through this argument today. Because what happened is this document was drafted at the Perry County Courthouse and was signed by both parties in front of the notary prior to being presented to Judge Campanella in Perry County. Now, prior to being presented to the judge, we have a contract. We have offer, acceptance, sign, seal, delivery. Consideration. Yes, the items in the contract do qualify as consideration. So we have perfected a contract before it was presented to Judge Campanella. Now, when it was presented to Judge Campanella, the discussion that occurred on the record during the transcript, which you can read the transcript, is evidence of the party's intent. Now, as your honors know, a meritorious settlement agreement or a brief judgment qualifies as contract. It's been treated as well settled law in the state of Illinois. It's a contract. And in order to interpret a contract, you have to get the party's intent. You know, try to figure out their intent. If possible, give it effect. And when the terms are unambiguous, use regular, ordinary, and natural meaning of the words. That comes from In Re of a Marriage with Bryony, which I quoted in my brief. It's also mentioned in In Re of a Marriage of Dinoco, which is an Illinois Supreme Court case that I also cited in my brief. So that's what the court is supposed to do with interpreting the language. Now, when the parties appeared in front of Judge Campanella, when he got to this portion of the agreement, he said, you can't do that. And there was a discussion on the record about whether or not it was possible for Monty to maintain receipt on his health insurance through his employer, Wells Fargo. And Monty's attorney at the time, who, by the way, was not me, I want to go on record as saying, Monty's attorney at the time made the statement about how they researched whether or not it was possible for this to occur. And based on the research during negotiations, they determined that it was possible for it to occur. If I recall, though, in the record, she didn't say, we researched. She said, I researched. None of that. I'm doing this in another case. She didn't say the other side and I had talked about this, and we both agreed this could happen. She said, I've researched it. I can do it. In fact, I'm doing another case in Illinois. And then Judge Campanella said, Mr. Cooner, are you sure you can do this? He said, I'm relying on my attorney. So it looks to me like if he has any remedy, it's maybe malpractice against his attorney. But I don't see that they went into this knowing in contract law they didn't make any alternative provision. If we can't do this, then we'll do this. None of that was in the contract with the MSA. And that's correct, Your Honor. That is not in the contract. However, at the same time that Ms. Rich was making these statements about the research that had been done during the negotiation process, Chrissy and her attorney were standing right there. They didn't say anything. They didn't say, no, that's not true. We didn't research. I had no part in this. This is impossible. This can't be done. Nothing was said from the other side about this. And what difference does that make? Well, Your Honor, the difference is they're now seeking to, in essence, modify this language to go outside of what it actually means. So the language says that he will maintain Chrissy on his health insurance. Maintain on his health insurance. And as I stated in my brief, the plain, ordinary definition of maintain is to keep. It's to keep, basically, in essence, the status quo. And that status quo was Chrissy was on his employer's health insurance. Your Honor, the status quo could also be interpreted, and that's why we have an issue here. The status quo could be to maintain insurance at the same level as she already had it. But that's not what the language says. It says maintain on his health insurance. So what do you do when your client agrees and the court is trying to clarify a term of the contract? If we put it in terms of contract law, we have a judge who's saying you need clarification of this term. And when we have ambiguous terms, we have to look at that. But that is not what Judge Campanella said. He didn't say we need clarification of this ambiguous term. But he did say you can't do this. He did. The difference is he was interpreting their intention that Chrissy would stay on Monty's insurance with Wells Fargo. That was the court's interpretation of the language in the agreed judgment. But didn't you just tell us that one of the things they have to do is determine intent? Yes, and I believe that that was Judge Campanella in determining the intent of the parties by engaging in this discussion about whether or not that's what it meant. Chrissy didn't pipe up and say, no, that's not what it means to me. You know, I don't intend to stay on his insurance with Wells Fargo. I intend to be insured in some other way. That was never brought up by the applicant. No, but she can stand there and let them figure out whether she's going to get insurance of any kind. She has the right to stand there and let them clarify a term of the contract. Because if it was a material term of the contract and your client didn't agree with it, then the contract could have been voided at that time. But could it have been? It's an enforceable agreement between the parties. At that point in time, when the judge signs off on it? No. Or when they enter into it? Correct. When they enter into it, it's an enforceable contract at that point in time. But what is the law on mistake when it comes to a contract? No, if there is not a meeting of the minds, then my recollection, and I don't know offhand, Justice, I apologize, but my recollection would be it wouldn't be enforceable. Would not? Would not. Because there's no meeting of the minds. I don't have case law on that, but that's my recollection. But that's not what you're pleading in this case. No, because based on Dinoco and the factors in interpreting a contract, we see the party's intent. We see that, well, it's very similar, and I'll get into the facts of Dinoco because I think it's very similar in this case. In the Dinoco case, husband and wife enter into an MSA that says husband's maintenance obligation is not modifiable. It doesn't say how it's non-modifiable, just says it's non-modifiable. He files to modify the maintenance obligation, and in so doing, he says, hey, we didn't specify how it's non-modifiable, therefore, I should be able to modify it based on the amount per month because my income has changed. The Supreme Court said no, and here what we have is clear language that says Monty is to maintain Christy on his health insurance until she reaches age 65. That is clear, unambiguous language, and as such, that language is enforceable pursuant to the Supreme Court's decision in Dinoco. Nothing in the MSA ordered Monty to keep working for Wells Fargo. What if he, the day after they signed this agreement, he walks out of court and 30 days pass, he quits Wells Fargo? Now you've got no insurance because I'm no longer- No, Your Honor, I respectfully disagree because it's maintained on his health insurance. So let's say he walks out of Wells Fargo and he goes and gets another health insurance policy, like a private health insurance policy. Pursuant to this language, he's got to put Christy on because it's his health insurance. But why does he have to get other insurance and put her on his insurance? But it's not on his insurance. His insurance, the insurance that covers him, would be his insurance, and so that's the difference. It's his insurance policy. His insurance policy would be the policy that covers him. And so- Your argument is that the plain language of the contract, even though it's impossible to fulfill, has to be fulfilled. No, not that it has to be fulfilled. It's that the interpretation of the language is that Monty was supposed to keep Christy on his health insurance. He's not able to. But the plain language- Bargained for as a part of this MSA. So what do you do about that when you're not getting the benefit of your bargain if you allow somebody to get out of a monetary payment? Well, Your Honor, the fact of the matter is both parties have the ability to research this. Both parties intervene to this. But there's a mistake, a mutual, maybe not mutual, but there's definitely a mistake, and it's a material mistake. And under contract law, I'm not sure you have a contract. There's no meeting of the minds based on what you're saying. Yeah, and I understand that. But I think the fact of the matter is that looking at the plain language, which that was what the minds would have meant at that particular point. You take the ordinary, normal, if you will, meaning of the words. So maintain on his health insurance. What are the normal, ordinary meaning of those words? And when you look at it that way, his obligation was to keep Christie on his current health insurance policy, which was and continues to be his employment through Wells Fargo. Now, if he leaves that, then he has to put Christie on his insurance wherever he were to go until she reaches age 65. But it seems to me that Judge Campanella recognized that there was a material misstatement, if you will, or inability to fulfill a provision of the contract. And I agree with you, and I'll go on record as saying he was right. But the fact of the matter is his comments, the contract was already made. So if somebody points out a material misstatement or a material mistake and there cannot be a meeting of the minds, what would you say has to be done in this case? I say that that paragraph, at the present time, it's not possible. That paragraph would stand. So if at any point in time it becomes possible, then Monty has to abide by it. Why wouldn't we set aside the full MSA as a contract? Well, Your Honor, I didn't draft this. Normally, when I do draft it, I have a provision that says that one part is being null and void. It doesn't nullify the entire amount. So, yes, it sounds to me like that would be the appropriate manner. We nullify the whole thing and go from there. But that's if we would find there was a material mistake such that there was no meeting of the minds. Correct. That's not what you're arguing. And that's not what I'm arguing because I don't think that's true, with all due respect to the justice. I don't think that's true, Your Honor. I think the issue is the appellee doesn't like the wording now, and we have a little bit of briar's remorse. That's what I believe has occurred here. I just don't know how you can argue that when Judge Campanello pointed out the problem. Because the party's contracting period had already occurred by the time he got a hold of it. And nothing is... And the MSA, you reach an MSA, but it's still not final until the judge makes a finding that's fair, reasonable, not unconscionable. Once that finding is made, and that's what Judge Campanello is doing. He's inquiring, is this really fair? Is this enforceable? Is it unconscionable? He's asking those questions. And when Attorney Rich says, yeah, we can do this, then he approves it. So I don't think it was a contract until. I mean, it may have been a tentative contract, but it's not binding on the parties until the court makes that finding. Well, I understand for the purposes of contempt proceeding, absolutely. But if either one of them had backed up, the other one could have filed a motion to enforce it at that point in time. Because it was a signed agreement by the parties. And there is case law that stands for the proposition that if the parties sign an agreement, even if it's one that is not signed by the judge, that, in fact, is an enforceable agreement onto the parties. So you're saying that, so following up on what Justice Baum was saying, if Judge Campanello had found that this was unreasonable, you're saying that the parties could have enforced the contract? I don't think so. I said not, I believe that they could have asked for the court to enforce the contract. But what if the court finds it's unreasonable? Well, unreasonable is a, it had to be unconscionable at that point. Unfair. Yeah, unconscionable contract is not enforceable. Right. So the contract still required the court to review it to make sure that it was conscionable, if you will. Right. And the court determined it was. And the, well, because of certain assurances that were made to the court that he allowed that. But I'm interested in the setting this contract aside issue where there's a mistake. I'm not putting this correctly. You say it could be enforced, even though the court had not put its imprimatur on it, that it was conscionable. So if the party, if one of the parties had backed out of it on their way into the courtroom. Yeah. You think it could have been enforced? I think they could have filed a motion to enforce it because it was a written document. It had been signed by the parties. And what was the consideration at that point? Everything that was contained within the agreement. But it had not been approved by the court. But it had not been approved by the court, but it doesn't require approval by the court to be a contract. I see. And I'm, I know my time is up. That's okay. We're in. We're conversing. Okay. One of the things I did want to bring to the court's attention, I know we've talked a lot about the plain language argument. That was in our brief. But also, if you take a look at the language, nothing in this language orders Monty to go and purchase private insurance for Christy. It's like a separate policy. It doesn't require that. It requires that she is on his policy. So, because of that, what the court, what Judge Campbell has done, the trial court has done, is gone outside the language of the agreed judgment for dissolution of marriage. So, your distinction that you're making is, I think, obvious. But because the language said to maintain her on his insurance, it has to be on Wells Fargo while he's able to have Wells Fargo insurance as his own. Had it said simply, he is to maintain insurance on her, that's open for discussion. He's going to have to require, he's going to get it wherever he can get it. Yes. So, that's the only difference? Yes, that's the main difference, Your Honor, is it's the combining of maintain and then the phrase on his insurance. But if you look at the plain meaning of those words, that's what we get our position from. So, one last question for me, and that is, what is the relief that you're seeking from this court? So, Judge Campbell, the trial court had ordered that my client go and purchase or pay $1,500 a month for private insurance for Ms. Coonert. And we are asking the court to reverse that ruling. In the alternative, I would ask the court if you're considering anything else other than that, would be to remand with direction. Specifically, if you believe that these words create an obligation for Monty to pay something towards her insurance, the most he should have to pay would be whatever it would have cost to have Chrissy on his Wells Fargo insurance. Is it any kind of what Judge Campanella ordered him to do? No, Judge Campanella ordered him to go and buy a private insurance policy and pay for that. I thought it was a private insurance policy equivalent to what she would have had. Yes, but the actual, the cost for him to maintain her on his employer-provided insurance, I believe would be substantially lower than $1,500 a month. So in other words, we're back to distinctions of language. The current order is for him to go and purchase insurance of an equal type. And you're saying that he was requiring her to pay for the same type of coverage, not the same cost of insurance. Correct, Your Honor. But that's not giving her what she bargained for of a policy that covers to a certain level for certain providers. And with all due respect, that's not giving him what he bargained for either when all he had to do was maintain his health insurance at work and pay her $8 million. It just seems that throughout this proceeding, Judge Campanella tried to talk him out of it. He kept telling him, you're agreeing to pay $8 million over the next, you know, one million a year for the next eight years. You understand most times maintenance ends with marriage, but in this case, you're going to have to keep paying. And he made several things clear. And Mr. Cooner said throughout, I understand that. This is what we're agreeing to. Judge Campanella says you can't keep her on your insurance. I understand that, but I'm told I can't. I'm relying on my attorney. She says I can. I'm willing to do that. Throughout this proceeding, Judge Campanella kind of raised some red flags, and I kept ignoring them and saying we want to do this. Because the parties had a meeting of the mind and had contracted for that during the negotiation process. And I understand the red flags that Judge Campanella brought up, and I agree with him 1,000 percent. I never would have negotiated this particular term on behalf of Mr. Cooner if I had been involved. But the fact of the matter is the term is very clear. He's supposed to maintain Chrissy on his health insurance. I don't think it matters for our case, but just for clarification, you're not related to Judge Campanella. He has kids who are lawyers, but you're not one of them. No, no. My husband is distantly related to Judge Campanella. It goes back to, like, the 1800s when a bunch of people came over from Sicily. Thank you. You'll have a few minutes after we hear from your opponent. Yes, Justice. Thank you. Thank you. Ms. Appleton? And we went over, so we recognize if you need a few extra minutes, you'll get those as well. Thank you so much.  Okay. Is there anything else? May it please the Court and may it please counsel, I am Shannon Appleton, and I represent Petitioner Appellee Chrissy Cooner. This case begins and ends with two sentences, Your Honor. They are the entirety of the agreement encompassed in paragraph J of the agreed judgment. The parties wrote them carefully, deliberately, and with precise attention to exactly one question. When does Monty's obligation end? Those two sentences provide this Court everything they need to decide the appeal. Sentence one is Monty shall maintain Chrissy on his health insurance until she reaches age 65 and can receive Medicare. Sentence two, once Chrissy secured Medicare coverage as quickly as possible after her 65th birthday, Monty's obligation to provide this coverage will terminate. It's Monty's obligation to provide it, not Wells Fargo, not an employer, not anybody else, but Monty's. If there were any ambiguity in sentence one about what Monty was obligated to do, sentence two resolves it completely. The parties themselves tell us that. Monty's obligation is to provide coverage, not a specific carrier plan, not as Wells Fargo benefits. That is the word the parties chose when they described what terminates. And we know that when these parties meant Wells Fargo, they wrote Wells Fargo. That name appears nine times in nine different paragraphs in this agreed judgment. The parties knew exactly how to use that term when they wanted to. They made a deliberate choice not to use it in paragraph J. That choice is not an accident. That choice is the contract itself. These parties were so deliberate about when Monty's obligation ended that they stated the termination condition twice, first by building it in to the duration of the obligation itself in sentence one, and second by re-estating it as an affirmative termination event in sentence two, using different words that led to an identical conclusion. Christy has not reached age 65. She's not secured Medicare. Those are the only two conditions under which Monty's obligation to provide coverage terminates under the plain language of both sentences of paragraph J. What about the portion of the sentence that says, is insurance? I believe, Your Honor, that when you look at the word his, it is that it is his obligation to maintain her on insurance. The obligation is his. I think when you look at that word, what it is leading towards is the obligation. The obligation is his, Monty's, to provide her, to maintain her on insurance, whatever insurance that may be. That is the issue, isn't it? If it's Wells Fargo, he cannot comply. And I think that is the essence of why the contract deliberately does not use the term Wells Fargo. But what do you do when a party cannot comply with the provision of the contract? I think that if we're looking at an argument of impossibility, I think that we're well aware of what the three elements are that were stated in Illinois-American Water that was cited by, I think, both parties. That, first, the circumstance creating the possibility was not and could not have been anticipated by the parties at the time of contracting. It was anticipated. Judge Campanella spoke about it. He said, this could happen. If this is what you're thinking, Monty, if this is what you're thinking, nobody ever asked any questions. This conversation was between Monty, Monty's attorney, and Judge Campanella. So, Judge Campanella says, if that's what you're thinking, that you can do it on Wells Fargo, don't believe that can be done. And what does Monty say? Monty says it right at page two of the report of proceedings. He says, I didn't think it could be done either. I didn't think it could be done. But then he says, I'm relying on them being the attorneys. He's relying on his attorney. He's adopting her assurances that she's making to the court that, oh, it can be done, it can be done. So, I think when we look at the second part of impossibility, that the point can be done. Let's assume, hypothetically, it can be done. Is Ms. Campanella correct that it would cost him less if he did it on Wells Fargo than if he's ordered to go out and buy it in the marketplace? I do not know. I don't know what the payment was for Wells Fargo insurance. That wasn't anything that I recall in this record being discussed. So, I can't give you an answer to that. What I can do is I can point out, well, I'll finish my thought if that's okay. Well, maybe I have one more follow-up. Yes, please. I'm sorry. But if you don't know the answer to the question, then the issue becomes whether he's ordered to provide similar insurance than what she's already got, regardless of the cost. Right? It doesn't matter what the cost is as long as the court has, I think Judge Campanella has said, we're going to give you what you bargained for. Right? I believe so. So, cost is not important. I don't believe that. I believe what was important and what was bargained for was the coverage. What was the bargain for exchanged between these two was, I need this coverage. You're going to provide this coverage. Okay, you're going to provide this coverage. I'll do this thing. Whatever those things were that talked about negotiations. But this was a bargain for exchange between two people, and they were comfortable with the way it was written. And now we've got Mr. Coonert coming back and saying, well, this is impossible. And he says in his motion to reconsider that this was something that was found to be impossible after the time of contracting. No, it wasn't. It was absolutely deemed to be maybe not possible for the method that you are pushing for may not be possible. Mr. Coonert says that's okay. Sign it anyway. I think you may have misunderstood what Justice Cage was asking. She'll correct me if I'm wrong about maybe I'm misunderstanding what she was asking. But Mr. Coonert is now being required, if we assume that he's required to provide coverage, equal coverage to what she had with the Wells Fargo policy, regardless of the cost. If it's less, if it's more, all he has to do is provide coverage that is the same coverage she would have enjoyed with the Wells Fargo. So he can't go buy a terrible, low-cost health insurance if Wells Fargo's insurance is up here. He can't provide something here to save a dollar. But if it costs him more for the private insurance, so be it. If it costs less, so be it. Is that your understanding? That is my understanding. That seems like typical enforcement to me. It would be like if ‑‑ It's not modification. It's enforcement. No, not in my opinion. No, it's very typical enforcement through the four corners of the contract. It's like I'm saying that I contract to maintain my car in good working order. I can't then just keep one of the tires in good working order. I would have to keep all four in good working order. And I think there's just some common principles that Judge Campanella was following when he wrote that order. And I think the language of that order is very important to look at, Justices, because it says that responded further. And this is the 42925 order. Responded further consents in open court and agrees to provide such health insurance from whatever source in an amount equal to at least what petitioner had through respondent's health insurance while she was married to him. He's not ordering Mr. Cooper to go out and buy private insurance. That's not what he's saying. He's not saying that at all. He's saying I'm leaving it open just like you guys left it open. I'm saying that this contract is enforceable. I can read the four corners of it and see what the intention was. And I'm not modifying it. I'm only asking you to do what you said you would do. When I flip back and I look at impossibility, the second part of it is the party asserting the doctrine didn't contribute to the circumstances. And I think we can all say that it was Monty's agent, his attorney, that pushed forth the theory that we believe that we're going to be able to use Wells Fargo to accommodate this particular paragraph. And that was something that Monty himself said. I didn't think it would work, but I'm relying on her assurances. Does Mrs. Cooner bear any responsibility or run any risk by not insisting on the inclusion of an alternative clause that if this cannot be done, this will be done? I don't believe so at all because I believe that it was very clear in what it stated. He'll maintain her on health insurance until she's 65 and receives Medicare. At the time she secures that Medicare at 65, assume they're at her, that is when his termination to provide that or his obligation to provide that coverage terminates. Again, that's such a big thing. You understood the word is insurance when you responded. You just said to provide insurance. The language of the document says is insurance, which is what Mrs. Campanella is arguing. Absolutely, to provide his insurance. And I think that's why it's important to read both sentences together. I think that's why the second sentence is so valuably important and why it was added in, that his responsibility, his obligation to provide insurance, his obligation to provide it, will terminate when she gets that Medicare coverage. I think you can't read one without the other. I think both of those sentences are equally important. I don't think that clause works without both of those sentences. The last thing that I would talk about as far as impossibility is that the party that demonstrates that it's claiming possibility demonstrates that it tried all practical alternatives available to permit performance. And, Justices, this is perhaps Monty's most complete failure of the three in our opinion. He contacted Wells Fargo. He's alleged to have filed one internal appeal. Wells Fargo said no. And Monty stopped him. He declared his obligation over. He never prized private insurance for Christy. He never offered to pay her premiums if she obtained her own coverage. He never saw marketplace quotes. He never came to the trial court and said, here's what I found. Here's what it costs. Here's why this alternative is impossible. His own attorney acknowledged at the April 29th hearing that Monty had researched private insurance costs, meaning he knew that they existed and he knew what they would cost. He just chose not to pursue it. Trying one method and receiving one rejection and not trying any practical alternatives is giving up, Your Honor. That's not trying all practical alternatives to permit performance. What have you done to secure performance, if anything? What has my client done? She has filed two rules to show cause to try to effectuate performance of this contract. Mr. Kumher was ordered at the April 29th hearing. That was based off the first rule to show cause. The order is very clear. It says that he consents and agrees in open court. He consented and agreed to this to provide insurance of whatever means. I'm paraphrasing now because I'm not looking down. Two rules. Did this court issue a stay in the proceedings? Yes. Is that still pending? Yes. So there's still a stay from this court of enforcement. Yes. So you can't have show cause proceedings. Well, the stay was issued after the notice of appeal was filed. We had two rules to show cause hearings. And at the end of the second one, then Monty's new counsel, Ms. Campanella, then filed a motion to reconsider. After that motion to reconsider was denied, that is when the notice to appeal was filed and the stay was issued. Okay. So your client has been without insurance since the stay. At least as far as Mr. Cooner paying for it. She's been without insurance since December of 2024. Because that is when Wells Fargo didn't give her insurance, which, I mean, we all knew would happen. And she hasn't had insurance since that point. And what we expected was that he would try a different method. And that's why it was shocking when he didn't. He did try some methods, though. He appealed Wells Fargo's determination, correct? I believe he states that he did. But I don't know if it's in the record. I can't put my eyes on the direct appeal letter in there. But I know that he did ask them to insure her. They said no. That was the end of the road as far as I know of what Monty did. Somebody related to Judge Campanella that he had tried, he'd gone through an appeal process. I mean, it may not be a denial of order letter in the file, but that was testified to. Yes, that's what he says. I don't have any independent knowledge of it, but that's what he says. I would also ask the court that to look more at whether Judge Campanella enforced or modified. I think that it's important that before addressing that, that we should look at what they actually ordered. And we've gone through that, that he's only telling him to provide health insurance from whatever source that he wants to. He left that wide open for him. He could satisfy this order tomorrow. He could satisfy it by paying Kristi's premium if she obtains her own coverage. He could secure her a policy through any carrier. He could find any source of equivalent coverage that works. The trial court gave him complete flexibility in how to fulfill the obligation that he agreed to. What the trial court did not give him is the permission to entirely abandon the obligation. And abandoning it is the only thing that Monty's actually done. There's a second and independent reason why this order can't be characterized as an unauthorized modification, and in our opinion, it's because of the plain language of the order. Monty consented to it. But more than that, he consented to it in the April 29th order. It says in the order he consents to and agrees to what we've then read over. But more than that, he induced it. And under Gaffney v. Board of Trustees, a party cannot complain on appeal of an error that they induced the trial court to make or to which the party consented. And Monty did both. In November 2024, his attorney stood in that courtroom and assured the court that Wells Fargo would allow coverage, inducing the court to enter paragraph J as written with unconditional language. Monty then adopted that representation on the record by confirming he was trusting his attorney. And in April 2025, again, he consented an open court to providing coverage from whatever source. And that's the very order he now appeals as an unauthorized modification. He induced it in November. He consented to it in April. Gaffney forecloses the argument twice over. But there is a third reason that the modification argument fails, and it's in our opinion the most fundamental one of all. Nothing in this order changed anything Monty agreed to do. Not one word. When you look at what paragraph J actually requires, they wrote in sentence 2 that Monty's obligation is to provide coverage. The April 29th order requires Monty to provide coverage. Those are identical. The trial court did not rewrite this agreement. It did not add an obligation that was not there. It did not change the termination clause. It did not change the beneficiary. It did not change the duration. It looked at what Monty promised. It looked at what Monty had failed to do. And it told him to do what he promised. That's not modification. That's an everyday enforcement, Your Honors. Was Monty threatened with any? This was a rule to show cause. Were there any sanctions imposed or threatened on him? He had no sanctions at the first rule to show cause. He had, I believe, 30 days, I believe, to get the... I think that was right. Yeah, but he wasn't ordered to pay court fees. He wasn't threatened to do this or go to jail or do this or pay $1,000 a day until it's done or anything like that. There was, he, in one of these, and I would have to flip to look where, he told the court that it was a joke. And he stormed out of the courtroom. And that is where there was a threat to go to jail at. It was because he had had an outburst in the court, and it's here in the record. And I believe that's where that discussion came from. But that's for behavior in the courtroom, not for failure to live up to the rules. I believe so. I believe that he wasn't, it wasn't, do this or I'm putting you in jail. I believe that it was more of, don't disrespect the court. But again, I mean, it's there in the record, but that was my interpretation. I'm going to have to stop here. Yes, ma'am. Do you have more questions? I have no questions. Thank you so much. I appreciate it. Thank you. Ms. Campanella? I think Ms. Appleton could have gone on all afternoon. I mean, I know Ms. Appleton very well. She could go on all afternoon. But I know you could argue all afternoon. Yes, the court has other things to do. Yeah, it's a beautiful day outside. Well, we have work. We have more cases after this one. Okay, what rebuttal do you have? Yes, Your Honors, thank you. One of the things that was just touched on that I did want to kind of clarify had to do with sanctions. Justice, I believe you were asking that question. The sanction of jail was mentioned, and that didn't have anything to do with my client's outburst. It wasn't, you're going to go to jail because you called this a joke. It was, you're going to go to jail if you don't pay for her health insurance, which is why we filed a motion to stay because I wanted my client to be able to have the right to have his appeal heard without his freedom being threatened, which is exactly what was happening. I filed it originally up here, and then I was told you've got to file it at the top court level, and I jumped through the appropriate group. I had to jump through, and then I filed it with this court. With regard to, I think, you know, Justice Cage, you kind of hit it on the head. The word his likes to be kind of glossed over of that sentence. My learned colleague argued that Monty shall maintain Christy on his health insurance until she reaches age 65 and can receive Medicare. She argues that the second sentence is necessary or the first sentence wouldn't have any meaning. I respectfully disagree with that. The first sentence is pretty clear. It says, Monty shall maintain Christy on his health insurance until she reaches age 65 and can receive Medicare. It could have stopped there, and that would have been the end of it. The language is very clear. Yet again, maintain on his health insurance. The doctrine of impossibility, Monty didn't contribute to this in the sense that he didn't tell Wells Fargo. You know, he adopted this policy about health insurance. He didn't do that. He didn't make Wells Fargo's policy about who could be covered under health insurance, and he did try. He went through the appellate process. Well, he did know when he went into this contract that there was a possibility it would not be covered. He was put on notice by the court, but he had already signed the contract. Well, regardless of whether he signed it or not, he was put on notice within minutes after signing the contract. I think there would still be a question of material misunderstanding such that there's no enforceable contract. And I understand that. That is a question, and I did not raise that question on appeal. My question more is related to the plain language. If you look at the plain language, the plain language is he's to maintain, you know, Christy, on his health insurance. That's pretty plain. My question becomes for this court, Ms. Campanellas, what do we do for a relief? Well, Your Honor, based on your appeal. Based on my appeal, you reversed the court's ruling that my client has to go buy private insurance. And leaving the language as it is, as I believe, you know, Justice, Justice Long, you had mentioned, if he, if Monty is ended up being covered under a different health insurance policy at some point, maybe he could cover on his health insurance. So I would ask the court to just reverse the ruling from back in April. Your Honors, just as I wrote in, like I mentioned previously, if you're going to do anything, remand with instruction. You need to figure out how much money, you know, Monty would owe. And I think that's an argument before the trial court with regard to that. On what basis would we remand under your theory of the case? You want to reverse it outright, but alternatively remand. So tell me what, what would be the theory of remand? The theory of remand would be that you all hold that my client does have an obligation to somehow provide insurance. The question becomes, does he provide insurance, is his obligation what it would cost to have her on his insurance with Wells Fargo? Is that the cap of his obligation? Or is it provide insurance in the equal type of insurance? And I think that is a question for the trial court. But isn't that what the trial court has already done? No, Your Honor. The trial court says, this language says you've got to go buy her private insurance. So you would ask for a hearing on that issue? I would. But really what I would ask is that you all reverse. Right, right. And in fact, would that be a modification of the MSA? And do we have the authority to unilaterally modify the MSA? She bargained for insurance to get her full coverage at this level she had with Wells Fargo. If he only has to pay the difference, she's getting way less insurance. So we're modifying what she was going to get. Well, and Your Honor, I would respectfully disagree with you because I look at it from the perspective of Monty's not getting what he bargained for. He bargained to maintain her on his health insurance. That was his bargain throughout the process. And as such, his bargain was I'm going to pay whatever monthly amount to have her on my insurance with Wells Fargo. Well, but following up on what Justice Vaughn said, the modification would be if we made the decision as to what he had to pay, whereas alternatively you would want a hearing on that issue. But it could still be a modification then. I don't know. See, I think it would be a modification, and I think it's a modification to order Monty to go and buy private insurance for Christy because that's not what the order says. That's not what the contract says. So one of the issues you're asking us to decide collaterally is enforcement versus modification.  Okay. Any other? Justice Barbaro? I see the wonderful red light. Okay. We have no other questions. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement. We will issue an order shortly. We understand there is a stay in place, so we'll do our best. Okay.